UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**GLORIA DENISE BEASLEY,**

       **Plaintiff,**        **CIVIL ACTION NO. 14-cv-14386**

       **v.**        **DISTRICT JUDGE MATTHEW F. LEITMAN**

**COMMISSIONER OF**        **MAGISTRATE JUDGE MONA K. MAJZOUB**
**SOCIAL SECURITY,**

       **Defendant.**
_____/

**REPORT AND RECOMMENDATION**

Plaintiff Gloria Denise Beasley seeks judicial review of Defendant Commissioner of Social Security's determination that she is not entitled to social security benefits for her physical and mental impairments under 42 U.S.C. § 405(g).  (Docket no. 1.)  Before the Court are Plaintiff's Motion for Summary Judgment (docket no. 12) and Defendant's Motion for Summary Judgment (docket no. 14).  Plaintiff has also filed a response to Defendant's Motion.  (Docket no. 15.)  The motions have been referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  (Docket no. 3.)  The Court has reviewed the pleadings, dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), and issues this Report and Recommendation.

**I.     RECOMMENDATION**

For the reasons that follow, it is recommended that Plaintiff's Motion for Summary Judgment (docket no. 12) be DENIED and Defendant's Motion for Summary Judgment (docket no. 14) be GRANTED.

## II.   PROCEDURAL HISTORY

Plaintiff filed applications for a period of disability, disability insurance benefits, and supplemental security income with a protective filing date of October 5, 2011, alleging that she has been disabled since April 22, 2011, due to a herniated disc, degenerative disc disease, diabetes, nerve damage to her right leg, constant pain, high cholesterol, her right leg "giv[ing] out," post-traumatic stress disorder (PTSD), and depression.  (TR 183-95, 204, 208.)  The Social Security Administration denied Plaintiff's claims on December 21, 2011, and Plaintiff requested a *de novo* hearing.  (TR 100-21, 132-34.)  On April 18, 2013, Plaintiff appeared with a representative and testified at the hearing before Administrative Law Judge (ALJ) Timothy C. Scallen.  (TR 33-55.)  In a July 2, 2013 decision, the ALJ found that Plaintiff was not entitled to benefits because she was capable of performing a significant number of jobs in the regional economy.  (TR 15-27.)  The Appeals Council declined to review the ALJ's decision (TR 1-6), and Plaintiff commenced this action for judicial review.  The parties then filed cross motions for summary judgment, which are currently before the Court.

## III.   HEARING TESTIMONY AND MEDICAL EVIDENCE

In her brief, Plaintiff set forth the procedural history of this matter and a detailed summary of the medical evidence and hearing testimony.  (Docket no. 12 at 2-19.)  The ALJ set out a detailed, factual recitation with regard to Plaintiff's medical record, Plaintiff's hearing testimony, and the vocational expert's (VE's) testimony in his decision.  (TR 20-27.)  Defendant generally concurred with Plaintiff's summary of the procedural history but provided her own synopsis of the medical evidence and hearing testimony.  (Docket no. 14 at 4-10.)  Although Plaintiff and Defendant recite evidence favorable to their respective positions, there are no material inconsistencies among the aforementioned accounts of the record; therefore, the

2

undersigned will incorporate the factual recitations by reference. Additionally, the undersigned has conducted an independent review of Plaintiff's medical record and the hearing transcript and will include comments and citations as necessary throughout this Report and Recommendation.

### IV. ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of April 22, 2011, and that Plaintiff suffered from the following severe impairments: diabetes mellitus, degenerative disc disease, and obesity. (TR 17.) The ALJ also found that Plaintiff's alleged carpal tunnel syndrome and depressive disorder were non-severe impairments. (TR 17-19.) Next, the ALJ found that Plaintiff's impairments did not meet or medically equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (TR 19-20.) The ALJ then found that Plaintiff had the following RFC:

> [C]laimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except that she requires the opportunity to alternate positions between sitting and standing at will, as long as she is not off-task more than 10% of the workday. The claimant can occasionally climb ramps or stairs, but never climb ladders, ropes, or scaffolds. Additionally, she can occasionally stoop, kneel, crouch, and crawl. However, she must avoid all exposure to excessive vibration and unprotected heights and use of hazardous machinery. Due to ongoing pain symptoms, the claimant is limited to simple, routine, and repetitive tasks.

(TR 20-26.) Subsequently, in reliance on the VE's testimony, the ALJ determined that Plaintiff was capable of performing a significant number of jobs in the regional economy. (TR 26-27.) Therefore, the ALJ found that Plaintiff was not disabled under the Social Security Act at any time from April 22, 2011, through the date of the decision. (TR 15, 27.)

## V. LAW AND ANALYSIS

### A. Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

**B.	Framework for Social Security Determinations**

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis. In the first four steps, Plaintiff was required to show that:

(1)	Plaintiff was not presently engaged in substantial gainful employment; and

(2)	Plaintiff suffered from a severe impairment; and

(3)	the impairment met or was medically equal to a "listed impairment;" or

(4)	Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work experience to determine if Plaintiff could perform other work. If not, Plaintiff would be deemed disabled. *See id.* at § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

**C.	Analysis**

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material

5

evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)." *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)). Under a sentence-four remand, the Court has the authority to "enter upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing. 42 U.S.C. § 405(g). Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration." *Morgan v. Astrue*, 10-207, 2011 WL 2292305, at *8 (E.D. Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174).

Plaintiff asserts that this matter should be reversed and/or remanded under sentence four because (1) the ALJ failed to properly weigh the medical evidence; (2) the ALJ's credibility findings were based upon false and incomplete information; and (3) the number of jobs that the ALJ found that Plaintiff could perform is insufficient. (Docket no. 12 at 20-25; docket no. 15 at 1-6.)

### 1. The ALJ's Assessment of the Medical Evidence

First, while not explicitly stated, Plaintiff seemingly argues that the ALJ failed to give good reasons for discounting the opinion of her treating physician, Dr. Alis D. Vidinas, M.D. (Docket no. 12 at 21-22.) It is well settled that the opinions of treating physicians are generally accorded substantial deference. In fact, the ALJ must give a treating physician's opinion complete deference if it is supported by clinical and laboratory diagnostic evidence and it is not inconsistent with the other substantial evidence in the record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). When an ALJ determines that a treating source's medical opinion is not controlling, he must determine how much weight to assign that opinion in light of several factors: (1) length of the treatment relationship and the frequency of examination; (2) nature and

6

extent of the treatment relationship; (3) supportability of the opinion; (4) consistency of the opinion with the record as a whole; (5) specialization of the treating source; and (6) other factors. 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6).

There is no *per se* rule that requires an articulation of each of the six regulatory factors listed in 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6). *Norris v. Comm'r of Soc. Sec.*, No. 11-CV-11974, 2012 WL 3584664, at *5 (E.D. Mich. Aug. 20, 2012) (citing *Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir. 2010)). An ALJ's failure to discuss the requisite factors may constitute harmless error (1) if "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it;" (2) "if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion;" or (3) "where the Commissioner has met the goal of [§ 1527(c)]—the provision of the procedural safeguard of reasons—even though she has not complied with the terms of the regulation." *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470 (6th Cir. 2006) (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004)).

The Commissioner requires its ALJs to "always give good reasons in [their] notice of determination or decision for the weight [they] give [a] treating source's opinion." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Those good reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Wilson*, 378 F.3d at 544 (quoting SSR 96-2p, 1996 WL 374188, at *5 (1996)). The district court should not hesitate to remand when the Commissioner has failed to identify the weight assigned to a treating physician's opinion and provide good reasons for that weight. *See Cole v. Astrue*, 661 F.3d 931, 939 (6th Cir. 2011) ("This Court has made clear that '[w]e do not

7

hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion and we will continue remanding when we encounter opinions from ALJ's that do not comprehensively set forth the reasons for the weight assigned to a treating physician's opinion.") (citing *Hensley v. Astrue*, 573 F.3d 263, 267 (6th Cir. 2009)).

> Here, the ALJ provided the following assessment of Dr. Vidinas's opinion:
>
> As for the opinion evidence, the undersigned has considered the opinion provided by the claimant's treating physician, Dr. Alis Vidinas (Ex. B1F/1-3). The undersigned gives Dr. Vidinas' opinion little weight. While Dr. Vidinas treated the claimant during the period relevant to this decision, his opinion is inconsistent with his own treatment notes and the medical records as a whole. Dr. Vidinas concluded the claimant's impairments prevented her from standing, walking or sitting more than one hour out of an eight-hour day and that the claimant was unable to work in any capacity because of her impairments (Ex. B1F/1-3). However, Dr. Vidinas' treatment notes indicate that Dr. Vidinas only recommended exercise for the claimant's back impairment (Ex. B1F; B3F). In addition, Dr. Vidinas' treatment notes do not reflect the severe limitations included in hi[s] medical source statement. Dr. Vidinas' treatment notes indicate the claimant had tenderness in her lumbar spine and slightly reduced strength in her right side, but do not indicate that the claimant had any difficulty walking during the appointments (Id.). In addition, despite the debilitating limitations in his medical source statement, Dr. Vidinas noted the claimant's straight leg raise testing was negative bilaterally and she was non-compliant with his recommendations (Ex. B1F/4-5; B3F/3; B7F/3). Dr. Vidinas' opinion is also inconsistent with the other exams in the record. Dr. Vidinas opined that the claimant was unable to stand or walk for more than [a] few minutes at one time in December 2011 (Ex. B1F/1-3). However, on July 30, 2012, Neurosurgeon, Dr. Ian Lee, indicated that the claimant's exam showed normal strength and sensation in her legs, she walked with a normal gait and she was alert and well oriented (Ex. B4F/3). In addition, the claimant's consultative exam in December 2012 indicated there was no evidence of focal muscle atrophy in any extremity and no signs of muscle spasms in her lumbar spine and no tenderness in her lumbar spine (Ex. B5F/3). Her range of motion in her lumbar spine was normal except for a reduced range of flexion and extension with reports of pain (Ex. B5F/3, 6). She had a normal range of motion in her hips and all extremities (Ex. B5F/3, 6-7). Lastly, the undersigned has given more weight to the opinions provided by the state agency medical consultant, Dr. Robert Roschmann (Ex. B2A/7-10). Unlike Dr. Vidinas, as a state agency medical consultant, Dr. Roschmann's opinion is consistent with the medical record.

(TR 23-24.)

8

Plaintiff suggests that the ALJ in the instant matter failed to provide good reasons for discounting her treating physician's opinion just as the ALJ did in *Gayheart v. Comm'r of Soc. Sec.*, for which that case was remanded. (Docket no. 12 at 21 (citing *Gayheart*, 710 F.3d 365 (6th Cir. 2013).) In *Gayheart*, the ALJ discounted the treating physician's opinions on the grounds that they were "not well-supported by any objective findings" and were "inconsistent with other credible evidence." 710 F.3d at 376. The Sixth Circuit found that those were not good reasons because the ALJ's first line of reasoning was ambiguous and because the ALJ did not support his second line of reasoning by identifying the evidence that was purportedly inconsistent with the treating physician's opinions. *Id*. at 376-77. Conversely, there is nothing ambiguous about the ALJ's reasons for discounting Dr. Vidinas's opinion in the instant matter; notably, Plaintiff has not asserted any instances of ambiguity. Moreover, the ALJ in the instant matter supported his lengthy, well-reasoned assessment of Dr. Vidinas's opinion by citing numerous specific examples of its inconsistency with Dr. Vidinas's own treatment notes as well as the results of examinations conducted by Plaintiff's neurosurgeon and the consultative examiner. (TR 23-24.) The ALJ in the instant matter did provide good reasons for discounting Dr. Vidinas's opinion; his assessment of Dr. Vidinas's opinion is supported by substantial evidence and should not be disturbed.

Plaintiff also contends that the ALJ erred not only by "disregarding" and "ignoring" her treating physician's opinion, but by assigning only some weight to the opinion of the consultative examiner, Dr. Jose Mari G. Jurado, M.D., and instead following the opinion of the state-agency non-examining physician, Dr. Robert Roschmann, M.D. (Docket no. 12 at 20; docket no. 15 at 2, 5.) According to Plaintiff, *Gayheart* "specifically prohibits giving great weight to evidence from a consulting or from a non-examining physician when a treating

9

physician has given an opinion." (Docket no. 12 at 22 (citing *Gayheart* at 375-76).) Plaintiff is incorrect. The portion of *Gayheart* to which Plaintiff cites reads as follows:

> As a general matter, an opinion from a medical source who has examined a claimant is given more weight than that from a source who has not performed an examination (a "nonexamining source"), [20 C.F.R.] § 404.1502, 404.1527(c)(1), and an opinion from a medical source who regularly treats the claimant (a "treating source") is afforded more weight than that from a source who has examined the claimant but does not have an ongoing treatment relationship (a "nontreating source"), *id.* § 404.1502, 404.1527(c)(2). In other words, "[t]he regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker." Soc. Sec. Rul. No. 96–6p, 1996 WL 374180, at *2 (Soc. Sec. Admin. July 2, 1996).
>
> The source of the opinion therefore dictates the process by which the Commissioner accords it weight. Treating-source opinions must be given "controlling weight" if two conditions are met: (1) the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) the opinion "is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). If the Commissioner does not give a treating-source opinion controlling weight, then the opinion is weighed based on the length, frequency, nature, and extent of the treatment relationship, *id.*, as well as the treating source's area of specialty and the degree to which the opinion is consistent with the record as a whole and is supported by relevant evidence, *id.* § 404.1527(c)(2)-(6).

*Gayheart*, 710 F.3d at 375-76. Later, the *Gayheart* court acknowledged the following:

> To be sure, a properly balanced analysis might allow the Commissioner to ultimately defer more to the opinions of consultative doctors than to those of treating physicians. Soc. Sec. Rul. No. 96–6p, 1996 WL 374180, at *3 ("In appropriate circumstances, opinions from ... psychological consultants ... may be entitled to greater weight than the opinions of treating or examining sources.").

*Id*. at 379-80. The Sixth Circuit later endorsed this concept: "An administrative law judge may give more weight to the opinions of examining or consultative sources where the treating physician's opinion is not well-supported by the objective medical records." *Dyer v. Soc. Sec. Admin.*, 568 F. App'x 422, 428 (6th Cir. 2014) (citing *Gayheart* at 379–80). As discussed above, the ALJ's decision to discount Plaintiff's treating physician's opinion on the basis that it is

10

inconsistent with the record evidence, among other things, is supported by substantial evidence. Additionally, Plaintiff does not assert substantive error with regard to the ALJ's assessment of the consultative examiner's opinion, and the Court finds none. Accordingly, Plaintiff's argument that the ALJ's decision to credit the non-examining physician's opinion over that of the treating and examining physicians violates binding case law, fails.

Next, Plaintiff challenges the ALJ's assessment of the opinion of the state–agency non-examining physician, Dr. Roschmann. Plaintiff asserts that a non-examining source's opinion cannot be used to support an ALJ's decision denying benefits where it is not based on a review of the entire record, citing *Jones v. Astrue*, 808 F. Supp. 2d 993 (E.D. Ky. Apr. 21, 2011). (Docket no. 12 at 22.) In *Jones*, a non-binding opinion, the court opined that Social Security Ruling 96-6p suggests that when a non-examiner's opinion is accorded more weight than that of a treating source, "then the non-examiner should have reviewed a *complete* record which contains the opinion of a specialist in the claimant's particular impairment who had access to more detailed and comprehensive information than did the treating source." *Jones*, 808 F. Supp. 2d at 998 (emphasis in original). Actually, SSR 96-6p advises that a non-examiner's "review of a complete case record that includes a medical report from a specialist in the individual's particular impairment which provides more detailed and comprehensive information than what was available to the individual's treating source" is an *example* of an appropriate circumstance in which to afford a non-examiner's opinion more weight than an examiner's opinion. SSR 96-6p, 1996 WL 374180, at *3 (emphasis added). Thus, there is no requirement that a non-examiner's opinion be based on a review of the entire record in order to support an ALJ's decision denying benefits, and Plaintiff's argument fails.

Finally, Plaintiff finds fault with a portion of the ALJ's reasoning for crediting Dr. Roschmann's opinion. In assigning Dr. Roschmann's opinion significant weight, the ALJ reasoned, among other things, that "Dr. Roschmann has specialized knowledge of the Social Security Administration's disability program." (TR 24-25.) Plaintiff argues that "the Social Security Administration has provided utterly no evidence to show that Dr. Roschmann was an expert regarding Social Security's regulations" and that it has provided no information regarding Dr. Roschmann's credentials. (Docket no. 12 at 20-21; docket no. 15 at 2.) But the ALJ did not find Dr. Roschmann to be an "expert regarding Social Security's regulations;" rather, he was commenting on Dr. Roschmann's specialized knowledge of the disability program in accordance with the regulatory factors listed in 20 C.F.R. §§ 404.1527(c), 416.927(c). Moreover, Plaintiff cites no authority that requires the Social Security Administration to provide the credentials of the state-agency physician, or any other medical source, when his opinion is relied upon by an ALJ. Plaintiff's argument lacks merit in this regard. Based on the above considerations, the ALJ's assessment of the medical evidence is supported by substantial evidence, and it should not be disturbed.

### 2. *The ALJ's Assessment of Plaintiff's Credibility*

Next, Plaintiff asserts that "[t]he "ALJ committed reversible error by basing his credibility findings upon false and incomplete information." (Docket no. 12 at 20, 23.) "[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Comm'r*, 127 F.3d 525, 531 (6th Cir. 1997). But credibility assessments are not insulated from judicial review. Despite the deference that is due, such a determination must nevertheless be supported by substantial evidence. *Id.* An ALJ's credibility

determination must contain "specific reasons . . . supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96–7p. "It is not sufficient to make a conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.'" *Id.* "[T]he adjudicator may find all, only some, or none of an individual's allegations to be credible" and may also find the statements credible to a certain degree. *Id.*

Further, to the extent that the ALJ found that Plaintiff's statements are not substantiated by the objective medical evidence in the record, the Regulations explicitly provide that "we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements." 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2). The ALJ will consider: (1) the claimant's daily activities, (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms, (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms, (5) treatment, other than medication, for symptom relief, (6) any measures used to relieve the symptoms, and (7) functional limitations and restrictions due to the pain or other symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994) (applying these factors).

Here, the ALJ considered Plaintiff's hearing testimony and written statements and found them to be less than fully credible. (TR 25.) In support of this determination, the ALJ reasoned:

> The medical record does not support the severity of the claimant's allegations. While the record indicates the claimant consistently reported low back pain, it also indicates that the claimant's treating physician, Dr. Vidinas, never recommended more than exercise and physical therapy for the claimant's back

13

pain after the claimant's alleged onset date (Ex. B1F/4-5; B3F; B7F). Dr. Vidinas also indicated that the claimant was non-compliant with his recommendations and there is no indication in the record that the claimant sought or received any physical therapy for her back impairment after her alleged onset date (Ex. B6F/35). The claimant testified that she could only lift three or four pounds because of pain and weakness in her upper extremities. However, her consultative exam in December 2012 indicated that she had a full range of motion in her upper extremities and no atrophy in the muscles in her upper extremities (Ex. B5F). While the claimant demonstrated zero grip strength in her right hand, the report indicates that she had no difficulty performing tasks that required fine and gross manipulation bilaterally and the record indicates that she never sought or received treatment for any problems with her right hand (Ex. B5F/3, 7-8). The claimant also testified that she was unable to stoop, kneel, crouch or crawl. However, her consultative exam indicated that she had a full range of motion in her lower extremities and retained sixty degrees of flexion, fifteen degrees of extension and a full range of lateral extension in her lumbar spine (Ex. B5F/6). In addition, while Dr. Vidinas concluded the claimant could never stoop and the claimant said she could never stoop, she also said that she drove a car on a regular basis. The diagnostic imaging in the record does not support the severity of the claimant's impairments. While the imaging in the record showed degenerative disc disease at multiple levels of the claimant's lumbar spine, it did not show any nerve root compression or disc herniations (Ex. B1F/20-21; B3F/24-25). The claimant also alleged disability based on depression. However, when the claimant sought treatment for depression, her mental status exams indicated her ability to concentrate, her memory and her psychomotor activity was normal (Ex. B2F/3-7). The claimant's activities of daily living do not support the severity of her impairments. While the claimant alleged disabling physical and mental limitations, she testified that she went outside regularly, drove a car, went to the store and went to band concerts at WSU and liked to bake.

(TR 25-26).

Plaintiff argues that the "sheer number of errors and misstatements in the ALJ's opinion" does not meet the credibility-determination standards. (Docket no. 12 at 23.) One such error claimed by Plaintiff is the ALJ's reliance on Dr. Vidinas's July 13, 2011 report that Plaintiff was "not very compliant with recommendations." (*Id*. (citing TR 25 (citing TR 389), TR 263).) Plaintiff claims that this was erroneous because there is no evidence of any non-compliance by Plaintiff anywhere else in the record. But Plaintiff's non-compliance with her treating physician's recommendations, even if there was only one reported instance, is certainly relevant

to her credibility, and Plaintiff cites no authority that finds reliance on one such report to be erroneous. Plaintiff also asserts that the ALJ erred by failing to mention the March 22, 2012 EMG test that demonstrated the possibility of radiculopathy but could not be completed because Plaintiff was unable to "tolerate the needle exam due to discomfort." (*Id.* (citing TR 318).) It is not clear why the ALJ did not mention this test; however, his failure to do so does not constitute reversible error, as an ALJ need not discuss every piece of evidence in the record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) (citation omitted).

Additionally, Plaintiff challenges the ALJ's analysis of Plaintiff's daily activities in relation to her credibility. (Docket no. 12 at 23.) Plaintiff interprets the ALJ's finding that Plaintiff's "activities of daily living do not support the severity of her impairments" (TR 26) as a conclusion that her daily activities were incompatible with disability, and she argues that such a conclusion is inconsistent with the holding in *Gayheart* that activities are not incompatible with disability unless there is evidence that they can be performed on a sustained basis. (*Id.* (citing *Gayheart*, 710 F.3d at 377).) But the court in *Gayheart* was analyzing the plaintiff's daily activities in relation to his mental impairments, particularly social functioning, which refers to one's "capacity to interact independently, appropriately, effectively, and on a sustained basis with other individuals." 710 F.3d at 377 (quoting 20 C.F.R. Part 404, Subpart P, Appendix 1, at 12.00). Such is not the case here; the ALJ was fully entitled to consider Plaintiff's activities of daily living in relation to her credibility. *See* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

As cited above, the ALJ set forth numerous legitimate reasons for discrediting Plaintiff's hearing testimony and written statements in his decision, many of which apply the factors set forth in 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). Moreover, the ALJ supported his finding that the severity of Plaintiff's subjective complaints was not supported by the objective medical

15

evidence by explicitly discussing and citing to several examples of inconsistency between Plaintiff's complaints and the medical record. Thus, the ALJ's decision is sufficiently specific to make clear to Plaintiff and to the Court the weight that he gave to Plaintiff's statements and the reasons for that weight. The ALJ's assessment of Plaintiff's credibility is supported by substantial evidence and should not be disturbed; Plaintiff's Motion should be denied in this regard.

### 3. The ALJ's Step-Five Determination

Finally, Plaintiff argues that the ALJ erred when, in reliance on the VE's testimony, he found that Plaintiff could perform a significant number of jobs. (Docket no. 12 at 23-25; docket no. 15 at 5-6.) In making this assertion, Plaintiff asserts that while the VE testified that a hypothetical individual of Plaintiff's age, education, work experience, and functional limitations could perform 2,500 jobs, she did not specify how many jobs such an individual could perform in the local economy. (*Id*.) Seemingly, Plaintiff believes that the number of jobs enumerated by the VE pertain to the national economy, and she claims that 2,500 jobs in an economy of over four million jobs is "ridiculous." (Docket no. 15 at 5.) Plaintiff, however, is mistaken. In response to the ALJ's hypothetical questions, the VE testified that there would be approximately 500 surveillance system monitor positions "in the local economy which is Southeastern Michigan" and approximately 2,000 various inspection positions in the local economy that the hypothetical individual could perform. (TR 51-52.) Then, in making his step-five determination, the ALJ acknowledged that the VE defined the relevant economy as Southeastern Michigan and relied on the VE's testimony in finding that Plaintiff could make a successful adjustment to other work that exists in significant numbers in the regional economy. (TR 26-27.) Plaintiff acknowledges that the Sixth Circuit has found 1,350 jobs in a region to be sufficient to

16

support an ALJ's step-five finding. (Docket no. 12 at 24 (citing *Hall v. Bowen*, 837 F.2d 272, 274-75 (6th Cir. 1988).) Accordingly, Plaintiff's argument fails with regard to this issue.

### 4. Plaintiff's Other Argument

In her conclusory paragraph, Plaintiff asserts that post-hearing evidence "confirms that the ALJ was wrong again by finding that Plaintiff's carpal tunnel syndrome was not a severe impairment." (Docket no. 12 at 25.) Plaintiff asserts that the Court can consider this post-hearing evidence because it could not have been produced until after the hearing. (*Id.*) Plaintiff, however, does not identify or describe this record evidence, and she does not offer any further argument or analysis with regard to this evidence in relation to Plaintiff's carpal tunnel syndrome or the alleged error made by the ALJ. The Court is not obligated to develop this argument on Plaintiff's behalf, and it declines to do so. *See Bush v. Astrue*, No. 12-11790, 2013 WL 1747807, at *14 (E.D. Mich. Jan. 25, 2013) (Grand, M.J.) (citation omitted).

## VI.  CONCLUSION

For the reasons stated herein, the Court should DENY Plaintiff's Motion for Summary Judgment (docket no. 12) and GRANT Defendant's Motion for Summary Judgment (docket no. 14).

### REVIEW OF REPORT AND RECOMMENDATION

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638

F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: January 5, 2016        s/ Mona K. Majzoub
                              MONA K. MAJZOUB
                              UNITED STATES MAGISTRATE JUDGE

## PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served upon counsel of record on this date.

Dated: January 5, 2016        s/ Lisa C. Bartlett
                              Case Manager